UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

CASE NO.

COMPASS iTECH, LLC,
A Florida Limited Liability Company,

        Plaintiff

v.

EVESTMENT ALLIANCE, LLC,
a Georgia Limited Liability Company,

        Defendant.

VERIFIED COMPLAINT WITH DEMAND FOR INJUNCTIVE RELIEF AND JURY TRIAL

## COMPLAINT AND DEMAND FOR INJUNCTIVE RELIEF AND JURY TRIAL

COMES NOW, Plaintiff, COMPASS iTECH, LLC, a Florida Limited Liability Company (hereinafter "Plaintiff" or "Compass"), by and through undersigned counsel, and sues Defendant, EVESTMENT ALLIANCE LLC, a Georgia Limited Liability Company (hereinafter "Defendant" or "eVestment"), alleges as follows:

### PARTIES

1. Compass is a Florida limited liability company doing business in Florida and throughout the United States with its principal office located at 4800 N. Federal Highway Ste A306, Boca Raton, Florida.

2. eVestment is a Georgia Limited Liability Company doing business in Florida and

throughout the United States with its principal office located at 5000 Olde Towne Parkway Suite 100, Marietta, Georgia, and on information and belief maintains a presence in this Judicial District.

## JURISDICTION AND VENUE

3. The court has jurisdiction over all claims in this matter pursuant to 28 U.S.C.A. § 1332(1) because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy, without interest, costs and attorney fees exceeds the sum specified by 28 USC § 1332. Further Defendant is subject to the personal jurisdiction of this court pursuant to § 48.193(1)(a) Fla. Stat. because Defendant has conducted, engaged in and carried out a business venture within the State of Florida pursuant to §48.193(1)(b) Fla. Stat., because Defendant has committed tortious acts within the State of Florida, and pursuant to §48.193(2) Fla. Stat. because Defendant is engaged in substantial not isolated business activities within the State of Florida.

Venue is proper under 28 U.S.C.A. 1390(a), and 1391(c) as the Defendant is doing business in this judicial District of Florida, Plaintiff's primary place of business is located within the Southern District of Florida and the damage is being caused within this District

## FACTS

4. Compass is in the business of selling computer software and services to investment firms for the efficient upload of financial data and performance information to research database firms which are utilized by institutional investors such as Retirement-Pension Funds, Government Agencies, Foundations, Endowments, Insurance Companies, or like entities ("Investors") to evaluate performance of the investment firms and make

investment decisions.

5. The research database firms accept uploads of financial data and performance information from the investment firms which is then made available to investors, with analytical tools, if they so elect to subscribe, so that they may review and compare investment firms and decide where to invest their funds.

6. Compass sells a program ( hereinafter called "ProFusion") which helps organize the financial data of the investment firm and then digitally uploads that data to all pertinent research database firms so that it can be done accurately, quickly and efficiently. Compass also provides additional services or project work to assist the investment firms enter their data and uploading it to the research database firms. When doing this function, Compass acts as the agent for the investment firm and uploads the needed data on the investment firm's behalf.

7. eVestment is the largest institutional research database firm and has a substantial control of the marketplace for such services. eVestment controls approximately eighty percent (80%) of the institutional research database market and is considered an essential database to be in for any investment firm.

8. eVestment solicits investment firms to upload their data at no cost to the investment firms so that it may be available for review by potential Investors. This is all public information data.

9. Compass only provides services and software to assist the data upload process. eVestment, however, provides various services. One such service is data analytics for which Investors may enter the eVestment database, and utilize tools for comparison of investment firms based upon the data that the investment firms provided. The Investors can then decide where

and how to invest its funds.

10. eVestment also offers its own data upload service ( hereinafter referred to as "Omni") which competes with the ProFusion services provided by Compass.

11. Originally the only choice an investment firm had was to upload its data manually to the research databases. This procedure is costly, time consuming, can be inaccurate, and labor intensive. eVestment came to the marketplace with a software product called Ease Exchange which later was re-branded as Omni. This product was largely never upgraded over the years and became antiquated for the needs of investment firms. It was still a time consuming program that could have accuracy issues and it lacked the ability to transmit the data simultaneously to all the research database firms in a digital manner. It did not solve the data upload difficulties experienced by investment firms.

12. Accurate, swift and virtually simultaneous transmission of upload data to all research databases was needed to ensure a fair and open marketplace. It was also important that the uploaded data was properly reflected in the information being given to Investors. This was not always happening. Compass solved that problem with its ProFusion product. Compass developed ProFusion and launched it in December 2011. ProFusion is a revolutionary new software application that collects and organizes data from investment firms and then distributes that data simultaneously out to more than 20 of the most pertinent research databases. Also built into ProFusion were a series of quality control check points and tracking tools to help insure the data was accurate and the process was properly monitored in a user-friendly environment. It also ends the advantage some investors may obtain by getting data before others as could occur with the others systems available.

13. With ProFusion you obtain accurate data uploaded to the research databases with data simultaneously uploaded to all research database firms, including eVestment. Having ProFusion available creates a viable option for updating research databases by creating an open and fair market, not only for this niche service, but for investment firms in general. Without ProFusion in the marketplace, investment firms are limited to uploading their data to the research databases either manually which is a very time consuming process, costly, prone to data inaccuracies and gives the data to certain databases earlier than others, or by using eVestment's Omni program which has been outdated and inefficient. To maintain a fair and open market place investment firms need various vendor options rather than one option that controls the industry.

14. Compass' ProFusion product far out-performed eVestment's Omni product. However, with these being substantially the only two (2) products available to the marketplace, with eVestment substantially controlling the entire data upload market (roughly 90%), and Compass having such a small share of the business, no anti-competitive action was initially taken by eVestment. As more clients learned of ProFusion and moved to utilizing ProFusion, eVestment took a more aggressive stance.

15. On or about December 2013 or January, 2014, eVestment, on information and belief, believing that the growth of ProFusion usage was damaging its sales of its Omni product, sought to purchase Compass. Those discussions between eVestment and Compass failed to achieve the desired goal of eVestment, being the acquisition of Compass and the ProFusion software.

16. Having failed to purchase Compass, eVestment started a campaign to cause interference with investment firms' utilization of the ProFusion product, by using such

methods as hiding connection links and implementing verification codes that would slow down and make ProFusion data uploads more difficult.

17. These data upload impediments were targeted against Compass and Compass customers as eVestment knew exactly who the Compass customers were by virtue of Compass' server addresses and login information. That is, since the ProFusion users were utilizing Compass servers for their data uploads, the identity of Compass customers was easily verifiable for eVestment.

18. On information and belief, in a campaign initiated on or about September 9, 2014, eVestment began contacting each of Compass' customers by letter, and/or telephone defaming Compass by saying that Compass is committing illegal acts, that Compass' activities are being brought to the authorities and threatening to stop servicing Compass' customers if they used Compass as their agent for uploads.

19. On information and belief, eVestment further stated and/or clearly implied that Compass had committed illegal acts that had been reported to the federal authorities and that it would block all access for data uploads originating from Compass, and did in fact do so, despite the fact that eVestment previously assigned data-entry only credentials to Compass.

20. Additionally, eVestment, on information and belief, directly or indirectly threatened that if the Compass customer shared its eVestment data-entry or any eVestment password with Compass that the customer may then be barred from uploading its financial data or be subject to another reprisal from eVestment.

21. As a direct result of these defamatory statements and tortious interference by eVestment with Compass' customers, Compass has been damaged in excess of $1,000,000.00.

22. All conditions precedent to bringing this action have occurred or been waived.

## COUNT I

### (Florida Deceptive and Unfair Trade Practices Act)

23. Paragraphs 1 through 22 are re-alleged and re-averred as if set forth at length.

24. eVestment, to stop competition with its computer software program and to stop sales being made to Compass for the ProFusion program, on information and belief, contacted each of Compass' clients, by letter and telephone, telling such clients that Compass was committing illegal acts and threatening such clients, either directly or indirectly, with being denied the ability to upload data or other reprisal from eVestment if they used the services of Compass to upload their firm's data into eVestment database.

25. eVestment, as the largest institutional investment firm data depository globally, knew that investment firms would need to be listed by eVestment, to be competitive with other investment firms.

26. eVestment, knew that there were only three (3) practical options available to the investment firms (Compass clients) it contacted; use ProFusion, use eVestment's product, Omni, a poorly performing program; or upload data manually, a very time consuming and costly process.

27. By making threats and slandering Compass, eVestment, knew clients would terminate their contracts or business relationships with Compass and be forced to utilize eVestment's program for data entry although it was and is an inferior product.

28. eVestment knew at the time it made such statements of illegal conduct, that Compass had not been charged with any crime, knew Compass had not been convicted of any

crime, knew that entry by Compass has been done legally, in fact with entry codes furnished by eVestment, eVestment's clients or Compass' clients. This information and type of entry was known by eVestment for years and was not objected to by eVestment.

29. Upon investment firms learning of the greater effectiveness of the ProFusion program, investment firms started shifting their data uploading processing to the ProFusion program and utilizing the services of Compass.

30. Upon eVestment recognizing the business of data uploading and processing shifting to Compass, eVestment unsuccessfully tried to purchase Compass.

31. Having failed to purchase Compass, eVestment embarked upon a plan to destroy Compass through disruption of Compass' data transmissions to eVestment and libelous and slanderous statements and threats. These actions caused clients of Compass to terminate or reduce the services being provided by Compass, directly damaging Compass in excess of $1,000,000.00.

32. Pursuant to Florida Statute 501, Plaintiff is entitled to recovery of reasonable attorney fees. Plaintiff has been required to protect its right to engage the undersigned law firm and has obligated itself to pay a reasonable attorney fees.

33. It should also be noted that such malicious activity by eVestment against Compass was also taken place at the same time eVestment was launching a newer and improved version of their Omni that was to compete more on par with ProFusion. Hence the disruption of Compass' business was strategic to give eVestment more leverage when approaching Compass' clients.

## COUNT II

### (Defamation)

34. Paragraph 1 through 22 are re-alleged and re-averred as if set forth at length herein.

35. The statements by eVestment, directly or indirectly implying, illegal conduct by Compass to Compass' customers was false and defamatory, without any privilege.

36. The conduct and actions of eVestment was at least negligent by failing to act with minimal due care to avoid causing damage to Compass.

37. The defamation by eVestment is defamation per se.

38. eVestment is not a newspaper or periodical publisher.

39. That as a direct result of the defamation made by eVestment, Compass has been damaged in excess of $1,000,000.00.

40. The actions by eVestment were intentional and malicious; with the purpose of obtaining a monetary benefit by driving business away from Plaintiff.

## COUNT III

### (Tortious Interference with a Business Relationship)

41. Paragraphs 1 through 22 are re-alleged and re-averred as if set forth at length herein.

42. Compass had a business relationship with its customers whereby it sold them software and provided ongoing services in connection with data collection and uploading.

43. eVestment, was aware of the Compass customers, both as to who they were and that they were being serviced by Compass.

44. eVestment intentionally and unjustifiably interfered with the relationship between Compass and its customers by contacting Compass' customers, defaming Compass and threatening the customers with termination of their ability to upload data to the data bank of eVestment.

45. As a direct result of the tortious interference with its relationship with its customers, Compass has been damaged in excess of $1,000,000.00.

## COUNT IV

### (Preliminary and Permanent Injunction)

46. Paragraphs 1 through 22 are re-alleged and re-averred as set forth at length herein.

47. The damage to Compass by virtue of the defamation and threats to customers is causing irreparable harm. The threats have caused customers to refuse to do business with Compass. Further, they forced customers to either do data uploads by hand or utilize the eVestment product, although it is inferior to the ProFusion product. The importing of inaccurate data or giving one investment firm an advantage over another by getting data first to Investors impacts the decisions of Investors and harms the public.

48. There is no adequate remedy at law as monetary damages alone cannot remedy the impact of the damage to the reputation of Compass and trust required for investment firms to utilize the Compass product and services.

49. There is a substantial likelihood that Compass will prevail on its claims. The

actions of eVestment are outrageous, defamation per se and are without merit or basis. There has been no illegal criminal conduct claimed or found by any governmental agency and therefor no basis for the eVestment defamation.

50. The public is protected by being assured that accurate, timely data is provided to the entities that invest its retirement funds and other investments. Impeding competition in data entry ensures that accurate, timely information is not provided and thereby threatens the public interest in an open and fair marketplace.

## JURY TRIAL DEMANDED

51. Plaintiff hereby demands a trial by jury for all causes and issues so triable.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, COMPASS iTECH, LLC, prays that this Court grant it the following relief:

(1) Judgment against Defendant, eVestment, for damages in excess of $1,000,000.00;

(2) Finding that Defendant, eVestment's conduct was intentional and malicious warranting punitive damages of three times actual damages;

(3) Preliminary and Permanent Injunctive relief against Defendant, eVestment, to require that they do not block, hinder, restrict, delay or otherwise impose selective requirements on uploading of data from Compass for its customers;

(4) Award Compass reasonable attorney fees and costs of this action;

(5) Such other relief as this Court deems proper and just.

## DECLARATION

I, Richard Gagnon, declare under penalty of perjury under 28 U.S.C. Sec. 1746, and the laws of the United States of America that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT;

Executed this 3rd day of October, 2014.

_____
Richard Gagnon, President
COMPASS ITECH LLC

Dated October 3, 2014.

Respectfully submitted

Perkins Pershes Law Firm

By_____
Robert E. Pershes (Fl Bar 0301906)
3839 NW Boca Raton Blvd Suite 200
Boca Raton, Florida 33431
Tel: 561-910-8923
rpershes@perkinspershes.com